UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERI BARNES, | ) Case No. CV 02-836-PJW |
| ) | |
| Plaintiff, | ) |
| ) MEMORANDUM OPINION AND ORDER | |
| v. | ) |
| ) | |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF THE | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| ) | |
| Defendant. | ) |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration (the "Agency"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Agency's decision is reversed and the case is remanded for further proceedings.

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ"), finding that she could perform her prior job as an office worker because the job requires frequent reaching, according to the Dictionary of Occupational Titles ("DOT"), and Plaintiff is limited to

only occasional reaching.  (Joint Stipulation at 5-6.)  The ALJ did not err in concluding that Plaintiff's past job did not require reaching.

The ALJ can evaluate a claimant's ability to perform her past work based on either a claimant's testimony as to how she performed it or the description of the job in the DOT.  *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).  Here, the ALJ analyzed Plaintiff's ability to perform her prior job as she described it during her testimony, which he was allowed to do.  *Id*.  As Plaintiff described the job, she mostly answered phones and typed on a keypunch machine. (Administrative Record ("AR") 69.)  She was not required to reach. Thus, restrictions for reaching noted by the examining doctor would not preclude Plaintiff from performing this job as she performed it, and the ALJ did not err in concluding that she could.

Nor did the ALJ err when he failed to consult the Grids in reaching his decision, as Plaintiff alleges in her brief.  (Joint Stipulation at 6.)  The Grids are only applicable at step five of the analysis.  *See* 20 C.F.R. 404, Subpart P, App. 2, § 200; 20 C.F.R. § 416.969.  The ALJ never got to step five because he found at step four that Plaintiff was not disabled, so he was not required to consult the Grids.

Plaintiff complains that the ALJ failed to find at step two that she suffered from a severe mental impairment.  (Joint Stipulation at 9.)  She points out that examining psychologist Jeannette Townsend

diagnosed her with depressive disorder with anxiety and alcohol dependence in remission. (Joint Stipulation at 9.) She notes that Dr. Townsend assessed Plaintiff with a GAF of 55.[1]

The ALJ based his finding that Plaintiff's depression did not amount to a severe impairment on the following grounds:

1. Plaintiff's treating doctor found that Plaintiff's depression was non-severe.
2. The evidence failed to establish the existence of any severe psychiatric disorder, apart from the limited effects of alcohol intoxication.

(AR 14.)

Neither of these grounds is supported by the record. For that reason, reversal is required.

At step two of the sequential evaluation process, the ALJ is tasked with identifying which impairments have more than a minimal effect on a claimant's ability to do basic work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). This is supposed to be a de minimis screening device and is intended to dispose of only groundless claims. *Id*. at 687.

Plaintiff has been treated by a psychiatrist for depression since August 2000. (AR 298.) This doctor prescribed Paxil, Wellbutrin, and

---

[1] The GAF scale is a means of reporting the clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 2000) (DSM-IV-TR), 32-34. A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*. at 34.

Prozac to treat it.  (AR 267, 291, 295.)  When Plaintiff testified at the last administrative hearing in June 2003, she was still seeing this psychiatrist and still taking Prozac.  (AR 90.)

In her report addressing Plaintiff's condition, examining psychologist Townsend concluded that, though Plaintiff could perform simple repetitive tasks, "[a]t present, [Plaintiff] is depressed and her intellectual efficiency is diminished and this would interfere with her ability to do more complex job duties."  (AR 274.)

In short, a fair reading of this record suggests that Plaintiff's depression had more than a minimal effect on her ability to work and the ALJ's failure to acknowledge that amounts to error.

The Agency disagrees.  It argues that the ALJ's finding that Plaintiff's depression was not a severe impairment is supported by Plaintiff's treating psychiatrist, who wrote in Plaintiff's chart on March 27, 2001, "no severe depression."  (Joint Stipulation at 11-12; AR 289.)  The Agency misses the point.  The treating psychiatrist was not offering an opinion on Plaintiff's condition vis-a-vis the Social Security step-two definition of non-severe.  Instead, he was quantifying Plaintiff's condition in a medical context.  Plaintiff was still being treated with Prozac for her "non-severe" depression more than two years after this note.  (AR 90.)  As a whole, the treating psychiatrist's notes establish that Plaintiff's depression had a significant impact on her life, including her ability to work.  (AR 287-98.)

The Agency also maintains that the ALJ found that Plaintiff's depression was controllable with drugs and, therefore, it was not a severe impairment.  (Joint Stipulation at 11.)  Though the underlying premise--that impairments that can be controlled with medication

cannot serve as a basis for disability--is correct, the ALJ did not reach this conclusion. Nowhere in his decision does he say that he is finding that Plaintiff's mental impairments are not severe because they are controlled with medication. This is important because the Court can only affirm an ALJ's decision for reasons he states in his decision. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Because the ALJ's conclusion that Plaintiff's depression was not a severe impairment is not supported by the record, it is reversed.

In her third claim of error, Plaintiff argues that the ALJ erred when he rejected the opinion of Plaintiff's treating physician, Dr. Nazir Al-Bussam. (Joint Stipulation at 13.) According to Dr. Al-Bussam's markings on a check-the-box form, Plaintiff is unable to work due to physical limitations. (AR 311-17.) The ALJ rejected Dr. Al-Bussam's opinion because it was "careless in consideration and inconsistent." (AR 13.) In doing so, the ALJ noted various inconsistencies on a September 26, 2002, check-the-box form filled out by the doctor. (AR 317.) Plaintiff complains that this was unfair because the ALJ ignored an April 2003 check-the-box form filled out by Dr. Al-Bussam that did not contain any inconsistencies. (Joint Stipulation at 12-15.)

The ALJ is tasked with evaluating the medical evidence and determining which evidence should be given the most weight. Generally, the treating physician's opinion is given the most weight because he is hired to cure and has the most contact with a claimant over the greatest period. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). The ALJ may reject the treating physician's opinion, but only if he cites specific and legitimate reasons for doing so that are based on substantial evidence in the record. *Orn v.*

5

*Astrue*, ___ F.3d ___, 2007 WL 2034287, at *5 (9th Cir. July 16, 2007). Though the treating doctor's failure to properly fill out a check-the-box form may be enough to meet this standard, the ALJ's failure to even mention the subsequent check-the-box form, which does not appear to contain the inconsistencies found in the first form, undercuts the ALJ's reasoning. The ALJ was not at liberty to selectively parse the evidence, considering only the evidence that supports his decision and ignoring the rest. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Instead, he should have considered all of Dr. Al-Bussam's records in toto in reaching his decision. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (holding treating doctor's later opinion based on more complete evaluation should be accorded greater weight). Finally, where as here, the ALJ has questions about a treating doctor's opinion which appears to be inconsistent, the better avenue is to contact the treating physician and have him explain the apparent inconsistencies, not to simply conclude that because the treating doctor made a mistake on a form the claimant's application for benefits should be denied. *See* 20 C.F.R. § 416.912(e); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

In her final claim for relief, Plaintiff contends that the ALJ erred when he found that she was not credible. For the following reasons, the Court agrees.

Credibility determinations are the province of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). But in order to find a claimant not credible, an ALJ must provide specific, clear, and convincing reasons for doing so. *Thomas*, 278 F.3d at 959-60.

1    It is not at all clear to the Court why the ALJ concluded that
2 Plaintiff was not "totally credible." (AR 15.) In the body of his
3 decision, he does not clearly set forth what evidence he is relying on
4 to reach this conclusion. (AR 14.) He does mention the fact that
5 Plaintiff testified in June 2003 that she had been using a cane to
6 walk and points out that there is no evidence that she consistently
7 used it. (AR 14.) He also points out that one doctor said she did
8 not need a cane. (AR 14.) Certainly, that is not enough to support
9 the ALJ's finding that Plaintiff was not credible.
10    The parties do not seem to have any better understanding of why
11 the ALJ found that Plaintiff was not credible. The Agency argues that
12 the ALJ was setting forth his reasons for the credibility finding in
13 the sentences that preceded the discussion about the cane, when he
14 concluded that Plaintiff's broken leg had healed properly. (Joint
15 Stipulation at 23.) Plaintiff thinks the ALJ was relying on
16 Plaintiff's daily activities. (Joint Stipulation at 20.) The Court
17 does not agree with either. And appellate review is not supposed to
18 involve a search. The ALJ is required to set forth in conspicuous
19 terms why the claimant is not credible so that everyone who reads his
20 decision can see what the basis of that ruling was and act on it
21 accordingly. His failure to do so here mandates reversal.
22    For these reasons, the decision is reversed and the case is
23 remanded for further proceedings consistent with this opinion.
24 Plaintiff's request that the Court simply credit her testimony and

7

award benefits is denied. As set forth in this Opinion, there are unresolved issues that need to be addressed before the ultimate issue of disability can be decided.

    IT IS SO ORDERED

    DATED:    August   23  , 2007

                                         /s/ Patrick J. Walsh
                                         PATRICK J. WALSH
                                         UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BARNES\Memo Opinion_Ord.wpd